UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL RIVARD,

        Petitioner,

                                    Case Number 13-12927

v.                                    Honorable Linda V. Parker

JOHN PRELESNIK,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS

On July 5, 2013, Petitioner Paul Rivard filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is challenging his March 2011 convictions for larceny from a building in violation of Michigan Compiled Laws § 750.360 and second-degree home invasion in violation of Michigan Compiled Laws § 750.110(a)(3) which followed a jury trial in the Circuit Court for Midland County, Michigan. The trial court sentenced Petitioner on April 14, 2011 to terms of imprisonment of 95-to-180 months for the larceny conviction and 10-to-25 years for the home invasion conviction.

In his application for habeas relief, Petitioner claims that: (1) there was insufficient evidence presented at trial to establish that he committed the offenses; (2) his right against double jeopardy was violated by being punished twice for one

criminal act; (3) his trial was rendered unfair by the admission of prior bad acts

between himself and the victim; and (4) the sentencing guidelines were miscalculated.

Respondent filed an Answer to the Petition on October 8, 2013.  For the reasons that

follow, the Court concludes that Petitioner's claims are without merit and therefore

denies his request for habeas relief.  The Court is also denying Petitioner a certificate

of appealability and permission to proceed on appeal in forma pauperis.

## I.  Factual and Procedural Background

This Court recites verbatim the relevant facts relied upon by the Michigan

Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C.

§ 2254(e)(1).  *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).  Those facts,

as summarized by the state appellate court, are as follows:

> Evidence was presented that defendant began showing the complainant
> unwanted and odd attention shortly after the complainant and her family
> moved into the home next door to defendant's home. The complainant
> testified that defendant informed her that he knew her husband's
> schedule[FN1] [FN1. The complainant's husband attended school out of
> town and came home on the weekends.] and that he paid close attention
> to the vehicles that came to and went from her home. She testified that
> defendant made unwelcome comments about her body, mowed her lawn
> without being asked, and offered to have a friend fix her van after the
> windows in the van had been broken. The complainant additionally
> described observing defendant walking down their adjacent driveways
> while zipping up his pants early one morning, then later that morning
> observing a man masturbating on her front porch. Though she did not
> see the face of the man on the porch, the complainant noted that the man
> was wearing the same clothing that defendant was had been [sic]
> wearing earlier that morning. In the approximate two months after the
> complainant moved into the home, her house was broken into eight or

2

nine times. The break-ins all occurred when no one was home and while the complainant's husband was out of town. The complainant testified that defendant called her "bitch," among other names, and that after one of the break-ins "bitch" was carved on the top of the deadbolt on the door. Police officers eventually recovered a belt and shirt from defendant's fire pit. The complainant and her husband identified the items as their property. Defendant admitted to burning the items. The complainant also testified that she found a baby monitor under her dresser that did not belong to her family, and that defendant had made comments regarding complainant's private conversations that had taken place in her bedroom.

*People v. Rivard*, No. 303856, 2012 WL 2335344, at *1 (Mich. Ct. App. June 19, 2012).

After its deliberations, the jury found Petitioner guilty of larceny from a building and second-degree home invasion. The trial court subsequently sentenced Petitioner as indicated above. Petitioner then filed a direct appeal in the Michigan Court of Appeals, raising the following claims:

I.    Rivard's Fourteenth Amendment right to due process was violated when he was convicted of second-degree home invasion where there was no evidence that he committed the crime.

II.   Rivard's right against double jeopardy was violated when he was convicted of second-degree home invasion and larceny in a building for the same act.

III.  Rivard was denied a fair trial by the erroneous admission of evidence which served only to assassinate his character in violation of Mich. R. Evid. 404(b).

IV.   Rivard is entitled to resentencing based on miscalculation of his sentencing guidelines.

3

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished

opinion.  *Id.*

Petitioner subsequently filed an application for leave to appeal in the Michigan

Supreme Court, raising the same claims as in the Michigan Court of Appeals.  The

Michigan Supreme Court denied Petitioner leave to appeal because it was not

persuaded that the questions presented should be reviewed by the court. *People v.*

*Rivard*, 823 N.W.2d 278 (Mich. 2012) (table).  This habeas petition followed.

## II.  Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes the

following standard of review on federal courts reviewing applications for a writ of

habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a state court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's

adjudication of a petitioner's claims unless the state court's decision was contrary to

4

or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429 (6th Cir. 1998). Again, the federal habeas court also must presume the correctness of the state court's factual determinations. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court has explained the proper application of the "contrary to" clause of § 2254(d)(1) as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (O'Connor, J., concurring).

With respect to the "unreasonable application" clause, the Supreme Court has held that a federal court may analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s

5

"unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.

*Id.* at 410-11.

The Supreme Court more recently reiterated that AEDPA requires federal habeas courts to review state-court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could  disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, – , 131 S. Ct. 770, 785-86 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

6

### III.  Analysis

### A.  Sufficiency of the Evidence

Petitioner first challenges the sufficiency of the evidence presented to prove his identity as the perpetrator of the crimes.  He asserts that the circumstantial evidence was inadequate to allow the jury to infer beyond a reasonable doubt that he committed the crimes and that the victim's testimony linking him to the crimes was too speculative.  The Michigan Court of Appeals rejected the claim on the merits, and because that adjudication did not involve an unreasonable application of the established Supreme Court standard, this Court finds that Petitioner's first claim is without merit.

The Due Process Clause prohibits a State from convicting "a person of a crime without proving the elements of that crime beyond a reasonable doubt." *Fiore v. White*, 531 U.S. 225, 228-29 (2001).  Sufficient evidence supports a conviction if, after viewing the evidence (and the inferences to be drawn therefrom) in the light most favorable to the prosecution, the court concludes that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006).  "This requires successful challengers to meet a very high threshold . . .." *Apanovitch*, 466 F.3d at 488.  The standard of review does not permit the federal court to make its own subjective determination of guilt or innocence; the

7

standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993); *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). In considering a sufficiency of the evidence claim, "circumstantial evidence is entitled to equal weight as direct evidence." *Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007).

The evidence presented at Petitioner's trial satisfied this standard. More importantly, the state appellate court's decision that the standard was met was at least a reasonable one. The evidence indicated that Petitioner knew the schedules of the complainant's family members, and that his interactions with the complainant were bizarre and indicated a twisted fascination with complainant. The complainant saw a man she recognized as Petitioner from his clothing masturbating on her front porch. Petitioner called the complainant "bitch," which corresponded with writing found in the home after the break-ins. Items of clothing went missing from the home, and the complainant identified charred remains in Petitioner's fire pit as being the clothes taken. Finally, Petitioner relayed details of private conversations the complainant had with her husband that could have been known only if Petitioner was the person who hid the baby monitor in the complainant's home.

The testimony of a victim alone can be constitutionally sufficient to sustain a conviction. *Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008). Here, the

8

complainant's testimony and the other circumstantial evidence allowed the jury to conclude beyond a reasonable doubt that Petitioner was the person who committed the home invasion and larceny.  The claim therefore is without merit.

## B.  Double Jeopardy

In his second claim, Petitioner asserts that his right against double jeopardy was violated because his convictions for home invasion and larceny involved the same criminal act.  Because this claim essentially boils down to whether the Michigan Legislature intended the two statutes to allow for multiple punishments– and the state courts found that it did– Petitioner cannot demonstrate entitlement to habeas relief.

The Fifth Amendment Double Jeopardy Clause protects a defendant against a second prosecution for the same offense after an acquittal or conviction and against multiple punishments for the same offense.  *Monge v. California*, 524 U.S. 721, 727-28 (1998); *Schiro v. Farley*, 510 U.S. 222, 229 (1994).  With respect to the double jeopardy protection against multiple punishments for the same offense– the issue presented here– the right is meant to restrict a court from imposing more punishment than the legislature intended.  Thus, the question of whether multiple punishments violates a defendant's right against double jeopardy is essentially one of legislative intent.  *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); *United States v. Davis*, 306 F.3d 398, 417-18 (6th Cir. 2002).

The test announced in *Blockburger v. United States*, 284 U.S. 299, 304 (1932),

9

assesses whether two statutes were intended to punish the same or different offenses. Nevertheless, even if two offenses are considered the same under the *Blockburger* test, multiple punishments for the same offense are allowed if legislative intent authorizing cumulative punishment is otherwise unambiguously stated in the statute or legislative history. *Missouri v. Hunter*, 459 U.S. 359, 367-68 (1983). Indeed, the *Blockburger* test is not even applied if traditional statutory construction reveals clear legislative intent authorizing or prohibiting cumulative punishment. *United States v. Hebeka*, 89 F.3d 279, 282 (6th Cir. 1996). Hence, the *Blockburger* test is not used on habeas review if the state courts have already clearly explained the legislative intent on point. *Banner v. Davis*, 886 F.2d 777, 781-82 (6th Cir. 1989).

Here, the Michigan Court of Appeals found that the Michigan Legislature intended for a person to be punished for both larceny from a dwelling and home invasion even if the conduct involved the same act. *Rivard*, 2012 WL 2335344, at *2. This finding is supported by the language of the State's larceny statute. *See* Mich. Comp. Laws § 750.110a(9) ("Imposition of a penalty under this section does not bar imposition of a penalty under any other applicable law.") Once the Michigan Court of Appeals made this determination, the established Supreme Court standard allowed the court to conclude that Petitioner's right against double jeopardy was not violated. Petitioner's second claim for relief therefore is without merit.

### C.  Prior Acts Evidence

10

In his third claim, Petitioner asserts that the introduction of evidence regarding his prior interactions with the complainant was overly prejudicial, and its admission violated Michigan Rule of Evidence 404(b). This claim is not cognizable in a federal habeas proceeding.

Petitioner's argument is basically a claim that the state court violated a state evidentiary rule, and as such, he has failed to state a claim upon which habeas corpus relief may be granted. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Danner v. Motley*, 448 F.3d 372, 375-76 (6th Cir. 2006). Federal habeas corpus review of evidentiary rulings based on state law is "extremely limited." *Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir. 2006). An issue concerning the admissibility of evidence or error in state law does not rise to a level of constitutional magnitude unless it can be viewed as so egregious that the petitioner was denied a fundamentally fair trial. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Foley v. Parker*, 488 F.3d 377, 384 (6th Cir. 2007) (amended opinion). Furthermore, "the Supreme Court has defined 'very narrowly' the category of infractions that violates 'fundamental fairness.'" *Bey v. Bagley*, 500 F.3d 514, 522 (6th Cir. 2008) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

There was nothing fundamentally unfair about admitting evidence regarding Petitioner's previous encounters with the complainant. Indeed, the evidence was relevant circumstantial evidence that tended to show Petitioner's identity as the

individual who broke into the complainant's home.  Inasmuch as Petitioner complains about the police officer's unsolicited trial testimony regarding Petitioner's parole status, the trial court instructed the jury to disregard the comment and not to consider it.[1]  "[J]uries are presumed to follow their instructions," *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), and a trial court generally can correct improprieties by informing the jury to disregard them.  *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011).  There is no reason to believe that Petitioner's jury would have been unable to follow the trial court's corrective instruction.  Habeas relief is not warranted on this claim.

### D.  Sentencing Guidelines

In his last claim for relief, Petitioner asserts that his sentencing guidelines were incorrectly scored.  The claim is not cognizable on federal habeas review.

It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Estelle*, supra.  Any claim by Petitioner that the state trial court misapplied the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas

---

[1]According to the brief filed by Petitioner's counsel in the Michigan Court of Appeals, the relevant testimony came from Officer Hampton during trial on March 14, 2011.  (*See* ECF No. 11-8 at Pg ID 836-37.)  The testimony is stated in Petitioner's appellate brief.  (*Id.*)  This portion of the transcript from that day of trial, however, is not included in the Rule 5 materials submitted by Respondent.  Petitioner's brief on appeal also quotes the trial court's instruction to the jury with respect to this evidence.  (*Id.* at n. 1.)

review, because it is basically a state law claim. *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003). Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence. *See Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 752 (E.D. Mich. 2005). Any claim that the state trial court miscalculated the sentencing guidelines thus does not entitle petitioner to habeas relief. *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999); *see also Cheatham v. Hosey*, No. 93-1319, 1993 WL 478854, at *2(6th Cir. Nov. 19, 1993) (finding the petitioner's claim that the trial court improperly departed from the Michigan sentencing guidelines in imposing his sentence not cognizable in federal habeas review).

### IV.  Conclusion, Certificate of Appealability & Leave to Appeal in Forma Pauperis

For the reasons set forth above, the Court holds that none of Petitioner's claims in support of his request for habeas relief have merit. Therefore, the Court is denying his request for habeas relief.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a court rejects a habeas claim on the merits, the substantial showing threshold is met if

13

the petitioner demonstrates that reasonable jurists would find the district court's

assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*,

529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating

that . . . jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

In applying that standard, a district court may not conduct a full merits review, but

must limit its examination to a threshold inquiry into the underlying merit of the

petitioner's claims. *Id*. at 336-37. "The district court must issue or deny a certificate

of appealability when it enters a final order adverse to the applicant." Rule 11(a) of

the Rules Governing § 2254 Cases.

Petitioner has not demonstrated a substantial showing of the denial of a

constitutional right. Viewing the evidence in a light most favorable to the

prosecution, there was sufficient evidence to convict Petitioner of larceny from a

building and second-degree home invasion. His double jeopardy rights were not

violated by the convictions. His claims concerning the admission of certain evidence

and the calculation of his sentencing guidelines are not cognizable on federal habeas

corpus review. Accordingly, a certificate of appealability is not warranted in this

case. The Court also is denying Petitioner permission to proceed on appeal in forma

pauperis because an appeal would be frivolous. *See* 28 U.S.C. § 1915(a)(3); Fed. R.

App.24(a).

14

Accordingly,

**IT IS ORDERED**, that the petition for writ of habeas corpus is **DENIED**;

**IT IS FURTHER ORDERED**, that a certificate of appealability and leave to

proceed in forma pauperis on appeal are **DENIED**.

> S/ Linda V. Parker
> LINDA V. PARKER
> U.S. DISTRICT JUDGE

Dated: November 26, 2014

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, November 26, 2014, by electronic and/or U.S. First Class mail.

> S/ Richard Loury
> Case Manager

15